**In re Angus F. CARRIGG, Debtor.**

**Ophelia C. CARRIGG, Plaintiff,**

v.

**Angus F. CARRIGG, Defendant.**

**Bankruptcy No. 81–00160.
Complaint No. 81–0109.**

United States Bankruptcy Court,
D. South Carolina.

Sept. 30, 1981.

Thomas B. Bryant, III, Bryant, Fanning & Yarboroug, Orangeburg, S. C., for plaintiff.

W. E. S. Robinson, Anderson & Robinson, P. A., Columbia, S. C., for defendant.

## ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

The plaintiff, alleging that the monthly payments of Two Hundred ($200) Dollars, which are due her by her former husband, the defendant, pursuant to an agreement entered into by them on May 18, 1978 and incorporated into a divorce decree [1], are in the nature of payments for alimony, maintenance or support, seeks an adjudication that said payments are nondischargeable under § 523(a)(5)(B) of the Bankruptcy Code (11 U.S.C. § 523(a)(5)(B)), which states:

> "(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt

> \*   \*   \*   \*   \*   \*

---

1. The agreement which was made a part of the divorce decree provided that the defendant should pay to the plaintiff the sum of $200 per month on the eighth day of each month until plaintiff's death or remarriage, commencing October 8, 1978.

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support."

On February 16, 1979, the plaintiff, Ophelia C. Carrigg, was granted a divorce *a vinculo matrimonii* from the defendant, Angus F. Carrigg, on the statutory ground of desertion for a period of one year or more. Section 20–3–10(2), Code of Laws of South Carolina (1976). The parties had one minor child, age 17, at the time of the divorce.

The divorce decree incorporated a property settlement agreement theretofore made and entered into between the plaintiff and the defendant which provided that "This payment is a property settlement, not alimony, and is designed to provide, or help provide, plaintiff a place in which to live in consideration for her giving up her residence in the family abode." The plaintiff was also to receive, as a "property settlement", payment from the sale of property in Florida which she jointly owned with her husband. The divorce decree stated that Ophelia C. Carrigg "has waived and she is hereby forever barred from alimony."

The defendant filed his petition for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 701 *et seq.*) on February 10, 1981.

## QUESTION

Are the payments ordered by the divorce decree nondischargeable under § 523(a)(5)(B)?

**2.** The rationale for this position, allowing the court to find that payments are in the nature of alimony in the face of a waiver of alimony under state law, is based upon the fact that a determination of whether payments constitute

## DISCUSSION AND FINDINGS

■ The plaintiff contends that this court should find that the payments to which she is entitled are for alimony, maintenance or support, even though they are referred to as "property settlement" payments in the divorce decree. Before reaching such a finding,

"The bankruptcy court must first determine whether a duty of support [alimony] exists between the parties under applicable state law. The court must then apply federal law to characterize the debts arising from this relationship for the purpose of determining the effect of bankruptcy upon those debts." *In re Warner*, 5 B.R. 434, 439 (Bkrtcy.D.Utah, 1980).

The defendant argues that because the settlement agreement, as incorporated in the divorce decree, included a waiver of alimony, this court is precluded from making a finding that the payments were in the nature of alimony and nondischargeable under § 523(a)(5)(B).

■ The plaintiff has the burden of proof. Bankruptcy Rule 407.

■ The legislative history of § 523(a)(5)(B) indicates that what constitutes alimony, maintenance or support should be determined under bankruptcy law, not state law. House Report No. 95–595, 95th Congress, 1st Session (1977), p. 363; Senate Report No. 95–989, 95th Congress, 1st Session (1978), pp. 77–79; U.S. Code Cong. & Admin.News 1978, p. 5787. Thus, a bankruptcy court may look beyond the four corners of the divorce decree or settlement agreement to make a finding that the payments were in the nature of alimony even where the divorce decree included a waiver of alimony. *Henry v. Henry*, 5 B.R. 342 (Bkrtcy.M.D.Fla.1980).[2]

alimony payments which are nondischargeable under the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) is a federal question governed by federal law and policy, not state law.

In determining whether a duty of support exists under South Carolina law, it is necessary to consider the property settlement agreement and the divorce decree, neither of which designated the payments as alimony. The divorce decree stated that the payment was "a property settlement" and that the plaintiff "had waived any alimony and she is hereby forever barred from alimony."

"Alimony is founded upon the legal duty of the husband to support his wife," *Nienow v. Nienow*, 268 S.C. 161, 167, 232 S.E.2d 504, 509 (1977), *Beasley v. Beasley*, 264 S.C. 611, 612, 216 S.E.2d 535 (1975), and " * * * is a substitute for the support which is normally incident to the marital relationship," *Nienow supra*, 232 S.E.2d at 510.

■ The plaintiff, with the consent of her counsel, voluntarily executed the property settlement agreement, thereby relinquishing her right to receive alimony payments. Under South Carolina law, a spouse may relinquish a right to alimony. *McNaughton v. McNaughton*, 258 S.C. 554, 558, 189 S.E.2d 820, 822 (1972). The agreement was subsequently reviewed by a family court judge, who, finding it reasonable, incorporated it into the divorce decree. The defendant's only payments mandated by the divorce decree were those agreed to by the plaintiff in their property settlement agreement.

■ Under bankruptcy law, the award in a divorce decree, in order to fall within the exceptions to discharge under 11 U.S.C. § 523(a)(5)(B), must be "actually in the nature of alimony, maintenance or support" which means "the award essentially must be for support or maintenance." *E. g., In re Fox*, 5 B.R. 317, 320 (Bkrtcy.N.D.Texas 1980).

There is a two-prong test which a debt arising from a state court order for the payment of alimony, support or maintenance must meet before the debt will be declared nondischargeable by the bankruptcy court. The first test is that the obligation be payable to a spouse, former spouse, or child; and the second test is that the obligation be in the nature of alimony, maintenance or support. *Matter of Spong*, 3 B.R. 619 (Bkrtcy.W.D.N.Y.1980); 11 U.S.C. § 523(a)(5)(B). The obligation imposed by the Carrigg divorce decree meets the first test because it is a payment to a former spouse. We now consider the second.

The agreement provides that:

"[t]he defendant shall pay directly to the plaintiff by check by mail the sum of Two Hundred and no/100 ($200.00) Dollars per month commencing October 8, 1978, and continuing on the 8th day of each month thereafter until plaintiff's death or remarriage. This payment is a property settlement, not alimony, and is designed to provide or help to provide plaintiff a place in which to live in consideration of her giving up residence in the family abode."

Although the agreement—now a part of the divorce decree—states that these payments are for property settlement rather than alimony, this is not conclusive because "[t]he bankruptcy court does not accept as determinative statements in the decree that it is just a property settlement, but rather looks at the substance of the decree to see if the obligations were in fact for the support of a spouse." *In re Warner*, 5 B.R. 434, 6 B.C.D. 788, 791 (Bkrtcy.D.Utah 1980). *See also, In re Diers*, 7 B.R. 18, 6 B.C.D. 983 (Bkrtcy.S.D.Ohio 1980).

The settlement agreement and the divorce decree reflect the intent of the parties at such time when the parties probably did not contemplate the filing of bankruptcy nor the effect of bankruptcy upon payments which were to be made pursuant to the agreement. As stated in *Warner, supra*, at 441:

" * * * it cannot routinely be argued that the divorce decree, like a contract, evidences the intent of the parties in discharging support, for often the effect of the filing of bankruptcy is not in contemplation when the decree is drafted. An award or waiver of 'alimony' may have been phrased for its effect on the tax liability of the parties or for some other

reason unrelated to the true character of the debt. Dischargeability is not at issue until this court's jurisdiction is invoked. Therefore, it cannot be said from that recitation that the intent of the parties was or was not to provide support for the spouse which is nondischargeable in bankruptcy. To hold the parties to the terms of a contract might often ignore the true nature of the debt." *See, Brown v. Felson*, 442 U.S. 127, 133, 99 S.Ct. 2205, 2210, 60 L.Ed.2d 767 (1979).

There is no evidence that the parties contemplated the defendant's filing a bankruptcy petition when they entered into their settlement agreement on May 18, 1978, much less the potential effects which the filing of bankruptcy might have on the plaintiff's waiver of alimony.

Under the agreement, the defendant was obligated to make the monthly payments "to provide plaintiff a place in which to live in consideration of her giving up her residence in the family abode." "[t]he obligation to maintain and support a family includes the obligation to keep a roof over their heads." *Poolman v. Poolman*, 289 F.2d 332, 335 (8th Cir. 1961).

The payment obligation has a "traditional characteristic of support" in that the payments continue until the death or remarriage of the plaintiff.[3] *See, Warner, supra*, at 440. When an obligation terminates upon the death or remarriage of the recipient spouse, or the death of the obligor spouse, some courts have held that alimony and support, rather than a property settlement, were intended. Annot. 74 A.L.R.2d 758 (1960) (and cases cited therein); *Fox, supra; cf. In the Matter of Taff*, 10 B.R. 101, at 104 (Bkrtcy.D.Conn.1981); *In re Snyder*, 7 B.R. 147, 150 (D.C.W.D.Va.1980); *In re Chrisman*, 6 B.R. 339 (W.D.Okla.1978).

The payments, required in the case at bar, relating to living expenses and terminating on the death or remarriage of the plaintiff, appear to be payments in the nature of alimony, support or maintenance.

---

**3.** The agreement does not specify a time period, in months or years, over which the obligor

### ORDER

For the reasons stated herein, the payments required of the defendant by the divorce decree, dated February 6, 1979, are determined to be in the nature of alimony, support, or maintenance, therefore, nondischargeable under 11 U.S.C. § 523(a)(5)(B); and

IT IS SO ORDERED.

spouse is required to make payments.